UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN C. LOFTUS and LOREEN K. LOFTUS, individually, and the marital community comprised thereof,<br><br>                Plaintiffs,<br>   v.<br><br>KITSAP COUNTY, a political subdivision of the State of Washington,<br><br>                Defendant. | CASE NO. 3:22-cv-05279-DGE<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING PLAINTIFFS' SUPPLEMENTAL CLAIM |

## I    INTRODUCTION

This matter comes before the Court on Defendant Kitsap County's motion for summary judgment. (Dkt. No. 21.) For the reasons articulated below, the Court GRANTS in part Defendant's motion.

## II    BACKGROUND

Plaintiff John C. Loftus ("Loftus") filed this suit after he was allegedly passed over for a Civil Deputy Sheriff position by his former employer, the Kitsap County Sheriff's Office

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING PLAINTIFFS' SUPPLEMENTAL CLAIM - 1

1  ("Sheriff's Office").  (Dkt. No. 20 at 3.)  On February 5, 2020, Loftus informed his employer
2  that he intended to retire at the end of year.  (Dkt. No. 24 at 29.)  In March 2020, the Sheriff's
3  Office circulated a job posting to fill a Civil Deputy Sheriff position.  (Dkt. Nos. 20 at 2; 22 at 7.)
4  Loftus applied for and interviewed for the position.  (Dkt. No. 20 at 2–3.)  Loftus was a Patrol
5  Deputy Sheriff at the time he applied for the Civil Deputy Sheriff position and had served in
6  such a role for 22 years.  (*Id.* at 3.)  On April 28, 2020, Loftus informed his employer that he was
7  "rescinding/recalling my 'intent to retire' email by the end of 2020."  (Dkt. No. 24 at 31.)

8      The supervisors responsible for interviewing for the position, Lieutenants Russ Clithero,
9  Jeffrey Menge, and Will Sapp, interviewed two other candidates who submitted a letter of
10 interest for the position—Alan Langguth, and Rick Stoner.  (Dkt. Nos. 20 at 3; 22 at 2.)  After
11 interviewing each of the candidates, the supervisors assigned the candidates corresponding
12 scores to measure their qualification for the position.  (Dkt. Nos. 20 at 3; 22 at 2–3.)  The parties
13 dispute how the supervisors allegedly scored the candidates, but it is undisputed that the final
14 scores ranked Langguth higher than Loftus or Stoner.  (Dkt. Nos. 20 at 3–4; 22 at 3.)  On
15 December 8, 2020, Loftus informed Chief of Patrol Steve Duckworth, of his intent to retire as of
16 January 1, 2021.  (Dkt. No. 24 at 33.)

17     Loftus ultimately reported he was not selected for the position to the U.S. Equal
18 Employment Opportunity Commission ("EEOC").  (Dkt. No. 20 at 4.)  The EEOC investigated
19 Loftus's complaint and found 1) there was "reasonable cause" to believe Plaintiff was not
20 selected "due to his age in violation of the" Age Discrimination in Employment Act ("ADEA" or
21 "the Act") and 2) Defendant failed to maintain their personnel and employment records as
22 required by federal regulations.  (Dkt. No. 30-1 at 9–10.)  Despite such a finding, the EEOC
23 declined to file suit against Defendant.  (Dkt. No. 30-1 at 12.)
24

On April 25, 2022, Plaintiffs filed suit against Defendant, alleging violations of the ADEA and Washington Revised Code 49.44.090(1).  (Dkt. No. 1 at 6–7.)  Plaintiffs amended their complaint on August 10, 2022.  (Dkt. No. 20).  On August 11, 2022, Defendant moved for summary judgment, alleging Plaintiff suffered no adverse action as required by the ADEA and Washington Revised Code 49.44.090.  (Dkt. No. 21 at 1–2.)  Plaintiffs filed their response in opposition to Defendant's motion for summary judgment on August 19, 2022.  (Dkt. No. 30.)  The Court asked for supplemental briefing from the Parties regarding the appropriate test for determining liability under the ADEA.  (Dkt. No. 36.)  The Parties filed their supplemental briefing on November 14, 2022.  (Dkt. Nos. 37, 38.)

### III    DISCUSSION

**A. Legal Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party."  *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Additionally, the moving party may meet their summary judgment burden by establishing through argument that the non-movant has failed to offer any evidence in support of their claims.  *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1263 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000); Fed. R. Civ. P. 56(e)(3).

### B. Loftus Did Not Suffer an "Adverse Employment Action" under the ADEA

    a. <u>Adverse Employment Action</u>

The ADEA makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual **with respect to his compensation, terms, conditions, or privileges of employment**, because of such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The Act applies to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Courts in this Circuit apply "the burden-shifting evidentiary framework of *McDonnell Douglas* to motions for summary judgment on ADEA claims." *Shelley v. Geren*, 666 F.3d 599, 607–08 (9th Cir. 2012) (citation omitted); *see also Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). Under this framework:

> a plaintiff must carry the initial burden to establish a prima facie case that creates an inference of discrimination. If the employee establishes a prima facie case, an inference of discrimination arises and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the burden shifts back to the employee to prove that the employer's explanation is a pretext for discrimination.

*France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015) (citation omitted), *as amended on reh'g* (Oct. 14, 2015).

To establish a prima facie case of employment discrimination, a plaintiff must establish "'(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). An adverse employment action is "one that 'materially affects the compensation, terms, conditions, or

privileges of employment.'" *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)).[1]

Courts have regularly held denial of transfers to lateral assignments that do not result in a material change to an employee's terms, conditions, or privileges of employment to not constitute adverse employment actions. *See Campbell*, 892 F.3d at 1012 (holding that requiring a teacher to teach remedial math classes did not constitute an adverse employment action because "[t]here is nothing in the record to suggest that such assignment was unusual or, more to the point, that it materially altered any term or condition of Campbell's employment at the school."); *Lee v. Potter*, 358 F. App'x 966, 967 (9th Cir. 2009) ("The denial of Plaintiff's request for reassignment did not constitute an adverse employment action. The move to supervisor was lateral; there was no termination, demotion, bad performance review, or refusal to promote."); *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000) ("Kortan was not demoted, was not stripped of work responsibilities, was not handed different or more burdensome work responsibilities, was not fired or suspended, was not denied any raises, and was not reduced in salary or in any other benefit."); *cf. Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (holding that transfer of job duties that did not affect compensation or fringe benefits or impacted an employee's career prospects did not constitute an adverse employment action). *But see Chambers v. D.C.*, 35 F.4th 870, 874–75 (D.C. Cir. 2022) (holding that requiring a plaintiff to show under Title VII that they have suffered "objectively tangible

---

[1] The language of Title VII of the Civil Rights Act parallels that of the ADEA and the Ninth Circuit regularly considers Title VII cases when determining what constitutes an adverse employment action under the ADEA. *See, e.g.*, *Whitman*, 541 F.3d at 932; *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) ("The analysis under Title VII is the same as that under ADEA.").

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING PLAINTIFFS' SUPPLEMENTAL CLAIM - 5

harm" is a "judicial gloss that lacks any textual support" and that a plaintiff need only show an employer discriminated against an employee "because of a protected characteristic.").

Defendant asserts summary judgment is warranted because Plaintiff Loftus did not suffer an adverse employment action when he was not selected for the civil deputy sheriff position. (Dkt. No. 21 at 11–12.) Specifically, Defendant argues, "[t]he assignment to civil deputy would not have resulted in a change in job title, compensation, responsibility, or working conditions." (*Id.* at 17.) Defendant puts forward a declaration from Lieutenant Sapp which describe the duties of the Patrol Deputy and Civil Deputy Sheriff positions. (Dkt. No. 22 at 2.) Lieutenant Sapp notes that "the civil deputy is still responsible for much of the duties of the patrol deputy, including responding to calls for service." (*Id.* at 2.) Patrol Chief Duckworth similarly attested Civil Deputies and Patrol Deputies face comparable on-the-job risks. (Dkt. No. 24 at 2.) Additionally, given Loftus's seniority, Loftus would have been "able to select and be assigned to his preferred shift, including day shift" as a patrol deputy. (*Id.* at 3.) According to Chief Duckworth, had Loftus received the Civil Deputy position, "he would have lost the three and one-half (3.5) percent assignment pay that he was being paid as a field training officer thereby reducing his take home pay and contributions to his LEOFF retirement account. He likely would also have had reduced opportunities for overtime pay." (*Id.* at 5.)

In response, Plaintiffs assert the Court should deny Defendant's summary judgment because Plaintiffs have not had a meaningful opportunity to conduct discovery as to potential economic harms Loftus suffered given that Defendant filed its summary judgment motion early in the case. (Dkt. No. 30 at 7–8.) Loftus also asserts, "I believe I have suffered demonstrable economic harm to me from not being selected as Civil Deputy." (Dkt. No. 30-2 at 5.)

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING PLAINTIFFS' SUPPLEMENTAL CLAIM - 6

1    "[A] district court should continue a summary judgment motion upon a good faith

2    showing by affidavit that the continuance is needed to obtain facts essential to preclude summary

3    judgment." *State of Cal., on Behalf of California Dep't of Toxic Substances Control v.*

4    *Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). The party opposing summary judgment must

5    specifically set forth in an affidavit 1) "the specific facts that they hope to elicit from further

6    discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to

7    resist the summary judgment motion." *Id.*

8        Plaintiffs' affidavit accompanying their response to Defendant's summary judgment

9    motion failed to adequately allege that a continuance of the summary judgment motion was

10    necessary to rebut Defendant's claim that Loftus did not suffer an adverse employment action.

11    (*See generally* Dkt. No. 30-2.) Plaintiffs did not set forth the facts they hope to elicit from

12    further discovery, that those facts exist, and that these facts are essential to rebut Defendant's

13    summary judgment motion. Given the early disposition of the case and case law suggesting that

14    a premature grant of summary judgment is disfavored when a plaintiff has not had the

15    opportunity to conduct significant discovery, the Court issued an order directing Plaintiffs to "to

16    identify the additional discovery, if any, necessary to respond to Defendant's" summary

17    judgment arguments. (Dkt. No. 39 at 1.) Plaintiffs failed to respond to this order and the Court

18    thus presumes Plaintiffs cannot identify additional discovery necessary to establish a genuine

19    issue of material fact as to whether Loftus suffered an adverse employment action.[2]

---

[2] The Court is also compelled by Defendant's argument that Loftus should be familiar with the evidence offered by Defendant as to the conditions and privileges of his employment and further discovery would not elicit additional information rebutting Defendant's argument. (See *Dkt*. No. 32 at 3–4.)

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING PLAINTIFFS' SUPPLEMENTAL CLAIM - 7

The Court concludes summary judgment is warranted because Plaintiffs have offered insufficient evidence to rebut Defendant's argument that Loftus did not suffer an adverse employment action. The only evidence Loftus offers as to potential tangible harm suffered is a speculative statement that he believes he suffered economic harm by not being selected for the Civil Deputy position. (Dkt. No. 30-2 at 5.) This is not sufficient to preclude summary judgment. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.")

      b. <u>Failure to Retain Interview Notes Does Not Raise a Genuine Issue of Material Fact</u>

Plaintiffs also assert the Court can infer a prima facie case of discrimination due to the destruction of notes Lieutenants Sapp and Menge made during the interview process (Dkt. No. 30 at 11–12). To support this assertion, Plaintiffs cite *Plummer v. Western Intern. Hotels Co., Inc.*, 656 F.2d 502 (9th Cir. 1981).

In *Plummer*, the Ninth Circuit noted that an EEOC determination letter is "a highly probative evaluation of an individual's discrimination complaint." *Id.* at 505. However, as Defendant's note in their reply brief, the Ninth Circuit subsequently noted, "[t]he fact that a determination from the EEOC is highly probative . . . does not support . . . [the] contention that an EEOC determination letter is somehow a free pass through summary judgment." *Mondero v. Salt River Project*, 400 F.3d 1207, 1215 (9th Cir. 2005); *see also Cooper v. Dignity Health*, No. 20-15377, 2021 WL 3667225, at *2 n.4 (9th Cir. Aug. 18, 2021) (noting an EEOC determination letter was not sufficient to preclude summary judgment because it did not refute facts rebutting accusations of pretext); *Fields v. Riverside Cement Co.*, 226 F. App'x 719, 721 n.2 (9th Cir.

1  2007) (affirming "district court's determination that EEOC reasonable cause determination letters

2  alone are insufficient to defeat summary judgment.").

3        The EEOC Determination letter is not sufficient to raise an issue of fact that may

4  preclude summary judgment. As noted above, Plaintiffs fail to offer any evidence the Court may

5  credit on summary judgment to rebut Defendant's assertion that Loftus did not suffer an adverse

6  employment action. Also, the EEOC did not conclude in its determination letter that Loftus

7  suffered an adverse employment action. (*See* Dkt. No. 30-1 at 9–10.) The probative value of

8  such a determination letter is limited and the Court finds the letter is not sufficient to preclude

9  summary judgment. *See Fields*, 226 F. App'x at 721 n.2 (noting that "the probative value" of

10  determination letters is "especially limited where . . . their contents are conclusory.").

11        c.   <u>Failure to Retain Interview Notes Does Not Merit an Adverse Inference</u>

12        The Court is also not convinced Defendant's failure to retain interview notes merits an

13  adverse inference. (*See* Dkt. No. 30 at 9)

14        Plaintiffs cite no authority to support their contention that violation of federal record

15  keeping requirements under 29 C.F.R. §§ 1627.1–3 is sufficient to warrant an adverse inference

16  precluding summary judgment. The Court is not aware of any on point Ninth Circuit authority.

17  But the Seventh Circuit in *Rummery v. Illinois Bell Tel. Co.*, 250 F.3d 553 (7th Cir. 2001)

18  specifically considered and rejected an argument that failure to retain hiring records pursuant to

19  EEOC regulation is sufficient to preclude summary judgment. *Rummery*, 250 F.3d at, 559. The

20  Seventh Circuit ultimately concluded, "[e]mployers are not required to keep every single piece of

21  scrap paper that various employees may create during the termination process. It is sufficient that

22  the employer retains only the actual employment record itself, not the rough drafts or processes

23  which may lead up to it." *Id.* at 558–59. Absent indications of bad faith or intent to deliberately

24

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21) AND DISMISSING PLAINTIFFS' SUPPLEMENTAL CLAIM - 9

destroy evidence, courts have found an adverse inference is not warranted. *See, e.g.*, *Punzo v. Casino*, No. CV 20-5581, 2022 WL 62888, at *5 (E.D. Pa. Jan. 5, 2022) (finding the failure to retain records pursuant to 29 C.F.R. § 1627.3 was not sufficient for an adverse inference absent "'bad faith' evidence.'").

Here, Plaintiff offers no evidence of an intent to withhold or destroy the interview notes on the part of Defendant. Defendant, by contrast, offers evidence the destruction of these notes was inadvertent. Lieutenants Menge and Sapp do not dispute they failed to preserve their interview notes but assert they were not aware these notes needed to be preserved given that the interview process was "informal." (Dkt. Nos. 22 at 4; 23 at 3; 32 at 9.)

As such, the Court finds the alleged failure to adhere to these EEOC regulations does not merit an adverse inference precluding summary judgment.

### C. The Court Declines to Exert Supplemental Jurisdiction over Plaintiffs' State Law Claim

Having dismissed Plaintiffs' federal law claim, the Court declines to exercise jurisdiction over Plaintiffs' supplemental state law claim. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'"); *see also* 28 U.S.C. § 1367(c)(3).

The Court thus dismisses Plaintiffs' state law claim for violation of Washington Revised Code 49.44.090(1) for lack of jurisdiction.

### IV   CONCLUSION

Accordingly, and having considered Defendant's motion (Dkt. No. 21), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's motion for summary judgment is GRANTED in part.

1. The Court GRANTS Defendant's summary judgment motion as to Plaintiffs' ADEA claim.  Plaintiffs' ADEA claim is DISMISSED with prejudice.

2. The Court DISMISSES Plaintiffs' claim pursuant to Washington Revised Code 49.44.090(1) for lack of jurisdiction.

Dated this 19th day of December, 2022.

David G. Estudillo
United States District Judge